IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION

POLYFORM A.G.P. INC.,                *
a Quebec, Canada corporation;
PLASTIQUES CELLULAIRES               *
POLYFORM INC., a Quebec, Canada
corporation; and NUDURA              *
CORPORATION, an Ontario, Canada
corporation,                         *
                                              CASE NO. 4:10-CV-43 (CDL)
        Plaintiffs,                  *

vs.                                  *

AIRLITE PLASTICS CO., a Nebraska     *
corporation,
                                     *
        Defendant.
                                     *

                              O R D E R

    This action arises from Defendant's alleged infringement of Plaintiffs' patent for stackable foam construction panels. Defendant seeks to have this action transferred to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404. Presently pending before the Court is Defendant's Motion to Transfer Venue (ECF No. 8) and Plaintiffs' motion for a hearing (ECF No. 13). For the reasons explained below, Defendant's motion is granted, and Plaintiffs' motion for a hearing is denied.

                             BACKGROUND

    Plaintiffs Polyform A.G.P. Inc. ("Polyform"), Plastiques Cellulaires Polyform, Inc. ("Plastiques Cellulaires"), and Nudura Corporation ("Nudura") (collectively, "Plaintiffs") filed this patent

infringement action in the Middle District of Georgia against Defendant Airlite Plastics Co. ("Defendant"). The relevant patent is U.S. Patent No. 6,401,419 ("'419 Patent"), entitled "Stackable Construction Panel." Compl. ¶¶ 1, 13-14, ECF No. 1. Plaintiffs allege that Defendant's stackable foam construction panel product, Fox Blocks, infringes the '419 patent. *Id.* ¶¶ 10-12.

Polyform, a Canadian corporation with its principal place of business in Quebec, owns the '419 patent. *Id.* ¶ 1. Plastiques Cellulaires, also a Canadian corporation with its principal place of business in Quebec, is the exclusive licensee of all rights to the '419 patent. *Id.* ¶ 2. Nudura, another Canadian corporation, which has its principal office in Ontario, has exclusive authority to distribute in the United States products made according to the '419 patent. *Id.* ¶ 3. Defendant, a Nebraska corporation, has its principal place of business in Omaha, Nebraska. *Id.* ¶ 4. The parties have limited connections to the Middle District of Georgia: Polyform manufactures its patented insulated concrete forms ("IFCs") at a Columbus, Georgia manufacturing facility, and Defendant has sold Fox Blocks within this district through an agreement with a local builder, Owner Builder Alliance ("OBA"). Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Transfer Venue and Pls.' Mot. for a Hearing [hereinafter Pls.' Mem.] Ex. 1, Trial Tr. vol. 3, 526:16-19, 8:07-cv-397 (D. Neb.), Feb. 25, 2009, ECF No. 13-3; Pls.' Mem. Ex. 7, Press

2

Release, Fox Blocks, Fox Blocks Announces P'ship with Owner Builder Alliance (Mar. 1, 2007), ECF No. 13-3.

Prior to the commencement of the present action, Plaintiffs filed an action against Defendant in the District of Nebraska, alleging that Defendant infringed the '419 patent. *See* Compl., *Polyform A.G.P. Inc. v. Airlite Plastics Co.* [hereinafter *Polyform I*], 8:07-cv-397 (LES) (D. Neb. Oct. 9, 2007), ECF No. 1. The United States District Court for the District of Nebraska conducted a *Markman* hearing on claims 1-3 of the '419 patent and issued a memorandum and order construing those claims. *Polyform I*, No. 8:07cv397, 2008 WL 4610017 (D. Neb. Oct. 15, 2008). The court also presided over seven days of trial regarding the validity of the patent and Defendant's alleged infringement. The jury found that claims 1-3 of the '419 patent were invalid, and the court therefore entered judgment in favor of Defendant. Judgment, *Polyform I*, D. Neb. ECF No. 335 [hereinafter Neb. J.]; Order, *Polyform I*, D. Neb. ECF No. 334. The court later denied Plaintiffs' renewed motion for judgment as a matter of law and motion for a new trial. Order Den. Mot. for J. as a Matter of Law and Mot. for New Trial, *Polyform I*, D. Neb. ECF No. 371. Plaintiffs filed a notice of appeal in the United States Court of Appeals for the Federal Circuit. Notice of Appeal, *Polyform I*, D. Neb. ECF No. 372. That appeal was subsequently dismissed pursuant to a voluntary dismissal agreed to by the parties.

*Polyform A.G.P. Inc. v. Airlite Plastics Co.*, 375 F. App'x 1 (Fed. Cir. 2009).

While the Nebraska litigation was pending, Polyform filed a reexamination request regarding the '419 patent with the United States Patent and Trademark Office. Pls.' Mem. Ex. 12, Reexamination Request Under 37 C.F.R. §1.510, ECF No. 13-3. The '419 patent was originally issued on June 11, 2002. Compl. ¶ 13. As a result of the ex parte reexamination, the United States Patent and Trademark Office issued new claims 14-25. Compl. Ex. 2, Ex Parte Reexamination Certificate, ECF No. 1-3. The present action arises from Defendant's alleged infringement of new claims 14-25. Shortly after Plaintiffs filed this Georgia action, Defendant filed a declaratory judgment action regarding the '419 patent in the District of Nebraska, seeking a declaration of non-infringement, seeking a declaration of invalidity, and asserting that collateral estoppel applies to Plaintiffs' claims. Def. Airlite Plastic Co's Mem. of Law in Supp. of its Mot. to Transfer Venue [hereinafter Def.'s Mem.] Ex. F, Compl. for Declaratory J. of Non-Infringement, Patent Invalidity, and Equitable Estoppel [hereinafter Airlite's Compl. for Declaratory J.], ECF No. 9-7. When it filed its Nebraska complaint for declaratory judgment, Defendant concurrently filed in this Court its presently pending motion to transfer venue. Airlite's Compl. for Declaratory J. ¶ 15.

DISCUSSION

**I.  28 U.S.C. § 1404 Principles**

Defendant seeks a transfer of this case to the District of Nebraska pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted). Because federal courts traditionally afford the plaintiff's choice of forum considerable deference, the party seeking the transfer bears the burden of establishing that the suggested forum is more convenient. *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam). Therefore, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

**II.  Where this Action "Might Have Been Brought"**

The Court must first consider whether the pending action "might have been brought" in the District of Nebraska. 28 U.S.C. § 1404(a). It is clear that the action might have been brought in that district.

5

Defendant Airlite is a Nebraska corporation with its principal place of business in Omaha, Nebraska. Compl. ¶ 4; Airlite's Answer, Affirmative Defenses, and Countercls. to Pls.' Compl. [hereinafter Answer] ¶ 4, ECF No. 6. Plaintiffs do not contend that this action could not have been brought in Nebraska. In fact, Plaintiffs acknowledged that the matter could be litigated in Nebraska when they brought their previous similar action concerning the '419 patent against Defendant in Nebraska. Therefore, the Court finds that this action could have been brought in the District of Nebraska. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."); 28 U.S.C. § 1391(c) (providing that "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action commenced").

### III. 28 U.S.C. § 1404(a) Factors

The Court must next determine whether the "convenience of the parties and witnesses" and "the interest of justice" weigh in favor of the requested transfer. 28 U.S.C. § 1404(a). The Eleventh Circuit has identified nine factors to evaluate when considering a motion to transfer venue under § 1404(a):

6

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### A. Neutral Factors

Several of the § 1404(a) factors are equally balanced. First, the convenience of the witnesses does not weigh for or against transfer. Defendant intends to rely upon the testimony of two key witnesses who are Airlite officers. Def.'s Reply in Supp. of Mot. to Transfer 11-12, ECF No. 19 [hereinafter Def.'s Reply]. These two officers are knowledgeable about Defendant's alleged infringing activities, including the development, production, marketing, and sales of the accused Fox Blocks product. *E.g.*, Def.'s Mem. Ex. E, Trial Tr. vol. 2, 293:20-294:16, Feb. 24, 2009, ECF No. 9-6; Def.'s Mem. Ex. B at ARLT20000007, Def.'s Initial Disclosures in *Polyform I* [hereinafter Def.'s Initial Disclosures], ECF No. 9-3; Def.'s Mem. Ex. B at ARLT20000012, Pls.' First Am. Initial Disclosures in *Polyform I*, [hereinafter Pls.' Am. Initial Disclosures], ECF No. 9-3. These officers live in Omaha, Nebraska, and it would be more convenient for them to testify there. *E.g.,* Def.'s Mem. Ex. E, Trial

Tr. vol. 5, 937:20-25, *Polyform I*, Feb. 27, 2009, ECF No. 9-6; Def.'s Initial Disclosures at ARLT20000007; Pls.' First Am. Initial Disclosures at ARLT20000012. *See AGSouth Genetics LLC v. Georgia Farm Servs. LLC*, No. 3:09-CV-93 (CDL), 2009 WL 4893588, at *4 (M.D. Ga. 2009) (discussing convenience of key witnesses).

Plaintiffs plan to rely primarily on the testimony of three witnesses to support claims of patent validity and the propriety of permanent injunctive relief: the inventor of the '419 Patent, Polyform's Vice-President, and Nudura's President. Pls.' Mem. 9. These witnesses live in Canada. *Id.* Plaintiffs argue that the Middle District of Georgia is more convenient than Nebraska for these witnesses because of the proximity of the Atlanta airport to Columbus, which Plaintiffs maintain is more convenient for international travel than the airport in Omaha, Nebraska. *Id.* The Court observes, however, that the nature of the Omaha airport did not present an impediment to these witnesses' testimony in *Polyform I*. *See* Def.'s Mem. Ex. B at ARLT20000028-29, Witness List, ECF No. 9-3. The Court finds that these witnesses will not be inconvenienced to testify in Nebraska for a second time.

The expert witnesses who testified in *Polyform I* and will likely testify in this action live in different states across the country. For example, Plaintiffs' technical expert is from Maryland, Defendant's expert resides in Virginia, and prior art inventor Robert

8

Martin, Jr. lives in Michigan. Pls.' Mem. Ex. 1, Trial Tr. vol. 6, 1107:12-13, *Polyform I*, Mar. 2, 2009, ECF No. 13-3; Pls.' Mem. Ex. 1, Trial Tr. vol. 5, 1032:22-23, *Polyform I*, Feb. 27, 2009, ECF No. 13-3; Pls.' Mem. Ex. 1, Trial Tr. vol. 4, 721:14-15, *Polyform I*, Feb. 26, 2009, ECF No. 13-3. The parties do not contend that it would be more or less convenient for these witnesses to testify in either venue.

Plaintiffs identify several witnesses they plan to call from Georgia and Florida in support of Plaintiffs' claim that Defendant's infringement is causing irreparable harm.[1] Plaintiffs argue that it would be more convenient for these witnesses to travel to the Middle District of Georgia for trial. Although most of these witnesses reside outside of the Middle District of Georgia, it may be more convenient for them to travel from Atlanta, Georgia and Florida to the Middle District of Georgia than it would be for them to travel to Omaha, Nebraska.

---

[1]Plaintiffs intend to call:

(1) Robert Beisel, a Nudura sales representative, from Atlanta, Georgia; (2) Personnel at the Columbus manufacturing facility; (3) Donald Charles, who is, upon information and belief, Airlite's area sales representative in Georgia; (4) Dennis Seevers, who is Airlite's [s]ales representative for the Southeastern United States who resides, upon information and belief, in Tampa, Florida[.]

Pls.' Mem. 9. Although identified as Donald Charles in Plaintiffs' brief, Donald Charles' full name is Donald Charles Mangimelli. Def.'s Reply 12.

Plaintiffs also intend to call OBA owner Gregory Carroll, but his whereabouts are apparently unknown to both parties. *See* Pls.' Mem. 9; Def.'s Reply 12; Def.'s Reply Ex. J, Jackson Decl. [hereinafter Jackson Decl.] ¶¶ 14-17, ECF No. 19-6. The last known business address of OBA was Dacula, Georgia. Jackson Decl. Ex. CC, Email from G. Carroll to D. Jackson, Jan. 18, 2008. Given that the last known business location for Gregory Carroll was in Georgia, the Court will assume that it is more convenient for him to testify here rather than in Nebraska.

In summary, some witnesses will be inconvenienced by having to travel to Omaha, Nebraska to testify at trial, and some witneesses will be inconvenienced by having to travel to Columbus, Georgia. Consequently, the Court finds this factor to be equally balanced.

In addition to the convenience of the witnesses, the Court also finds that the relative means of the parties and familiarity with the applicable law are equally balanced. The parties do not contend that the relative means of the parties are unequal, thus tilting the balance in favor of one forum over the other. Further, both federal courts will be equally familiar with the governing law.

B.  Factors Favoring Transfer

The following factors favor transfer: (1) ease of access to sources of proof; (2) convenience of the parties; (3) locus of

operative facts; and (4) judicial economy and the interest of justice.

The physical location of relevant documents is not a significant factor regarding transfer given that most "of the relevant documents regarding aspects of the alleged infringement and patent-in-suit have already been collected and produced between the parties" in *Polyform I*. Def.'s Mem. 13; *see also* Pls.' Mem. 17. To the extent that Plaintiffs intend to introduce documents that are located in the Middle District of Georgia and are different from those produced in *Polyform I,* the Court agrees with Plaintiffs that this factor is not particularly significant given the widespread use of electronic document production. *See* Pls.' Mem. 17; *see also AGSouth Genetics LLC*, 2009 WL 4893588, at *3 (finding documents located in transferor forum could be provided through discovery). The ease of access to other sources of proof, however, supports transfer. Product samples of the accused products are located in Omaha, Nebraska, along with the actual physical exhibits of prior art from *Polyform I* that Defendant will again use to defend against Plaintiffs' infringement claims. Def.'s Mem. 12; Def.'s Initial Disclosures at ARLT20000007. Plaintiffs argue that Defendant ships its products in sufficient quantities and would have "little difficulty in shipping several of the infringing blocks from Florida to Columbus." Pls.' Mem. 16. Defendant presumably could ship product samples from the facility in

11

Florida that manufactures Defendant's accused products. *See* Pls.' Mem. Ex. 10, Clever Newsletter Archive: March 2008, ECF No. 13-3. The prior art is located in Nebraska, however, and Defendant would be inconvenienced by having to ship the prior art to Georgia, as compared to the ease with which that evidence could be transported to the courthouse in the District Court of Nebraska. *See* Def.'s Mem. 12. In summary, the location of relevant documents is neutral, but the location of actual trial exhibits favors the District of Nebraska. Accordingly, the Court finds that this factor favors transferring the case.

The convenience of the parties also weighs in favor of transfer. Defendant is a Nebraska corporation, and it would obviously be more convenient for Defendant to litigate there. The Court also finds it curious that Plaintiffs now suddenly find Nebraska inconvenient, yet they chose that forum when they initiated *Polyform I* by filing suit there. *See Nolte v. BellSouth Telecomms., Inc.*, No. Civ.A. 3:07-CV-782IP, 2007 WL 2253561, at *2 (N.D. Ala. June 29, 2007) (noting that plaintiff could not claim that forum was inconvenient because she filed previous action against defendant there). The Court finds that this factor supports transfer.

The locus of operative facts also supports the motion to transfer. The Court rejects Plaintiffs' claim that the locus of operative facts is the Middle District of Georgia. *See* Pls.'

12

Mem. 11. The focus of Plaintiffs' Complaint is Defendant's alleged acts of infringement. Compl. ¶¶ 6, 11, 14. The design, development, marketing, manufacture, and sale of Defendant's accused product will be the primary issues in this litigation.[2] *See Tissue Extraction Devices, LLC v. Suros Surgical Sys., Inc.,* No. 08 C 140, 2008 WL 4717158, at *4 (N.D. Ill. May 20, 2008) (noting that, for patent infringement claims, "the situs of material events is the location where the defendant originally made its decision to launch the allegedly offending product"); *see also AGSouth Genetics LLC*, 2009 WL 4893588, at *3 (finding that locus of operative facts factor favored transfer because alleged acts of infringement happened in transferee forum). The decisions regarding the design, development, and

---

[2]The Court notes that "[s]everal district courts have held that the 'center of gravity' for a patent infringement case is where the accused product was designed and developed, and that this center of gravity is the preferred forum for a patent infringement suit." *Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877-CIV, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009). Plaintiffs cite *Pureterra Naturals, Inc. v. Cut-Heal Animal Care Prods., Inc.*, 674 F. Supp. 2d 1294, 1299 (M.D. Fla. 2009) to support the argument that the "center of gravity" analysis is inapplicable to this case because Defendant has acknowledged that personal jurisdiction is proper in this Court. Pls.' Mem. 11. Unlike the question in *Pureterra Naturals, Inc.* of whether venue was *proper*, the Court here is evaluating whether the Middle District of Georgia is the locus of operative facts for the purpose of determining which venue is more *convenient*. Further, while some courts will "disregard plaintiff's choice of forum in cases involving claims of patent infringement," finding the preferred forum to be the "center of gravity," *Trace-Wilco, Inc.*, 2009 WL 455432, at *2-*3 (internal quotation marks omitted), that is not what the Court is doing here. The Court is not disregarding the Plaintiffs' choice of forum *solely* in favor of the "center of gravity," but the Court does find that evaluating the primary location of Defendant's activities regarding the design, development, marketing, manufacture, and sale of the allegedly infringing products is central to whether the locus of operative facts is the Middle District of Georgia.

13

marketing of Fox Blocks were made by Airlite's officers in Omaha, Nebraska. Def.'s Mem. Ex. E, Trial Tr. vol. 2, 293:20-294:16, *Polyform I*, Feb. 24, 2009, ECF No. 9-6. Defendant manufactures the majority of its accused products in Omaha, Nebraska. *See* Def.'s Reply Ex. I, Gredys Decl. [hereinafter Gredys Decl.] ¶ 9, ECF No. 19-5. Plaintiffs argue that Defendant manufactures some of its products in Florida and that "bring[s] the locus closer to Georgia than Nebraska." Pls.' Mem. 11. Only a small percentage of the accused products are manufactured in Florida. Gredys Decl. ¶ 10. Furthermore, the Court cannot comprehend how manufacturing activities in Florida should be considered activities in the Middle District of Georgia for purposes of determining whether the locus of operative facts is in the Middle District of Georgia or the District of Nebraska.

Plaintiffs also point to Defendant's partnership with OBA to sell Fox Blocks to support the argument that the facts central to this action occurred in Georgia. Pls.' Mem. 11; *see also* Pls.' Mem. Ex. 7, Press Release, Fox Blocks, Fox Blocks Announces P'ship with Owner Builder Alliance (Mar. 1, 2007), ECF No. 13-3. The arrangement between Defendant and OBA resulted in two sales in 2007. Jackson Decl. ¶¶ 8, 11. The sales were made to customers outside of Georgia. *Id.* ¶¶ 9-10. This limited sales activity is not enough to shift the focus from Omaha, Nebraska, the central location for most of the

design, development, marketing, and manufacturing activities for the allegedly infringing product. *See Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 482-83 (D.N.J. 1993) ("In the large picture, these sales activities in New Jersey are insignificant and do not . . . change the fact that the central and essential activities relevant to this lawsuit-the design, research, development and marketing of the [allegedly infringing product] occurred outside of New Jersey."). Finally, Plaintiffs argue that the irreparable harm caused by Defendant's infringing activities will be felt most acutely at the manufacturing plant located here. Pls.' Mem. 11; *see also* Compl. ¶¶ 12, 15. Although Plaintiffs will be required to show irreparable harm to establish their entitlement to injunctive relief, Plaintiffs must first prove actual infringement and defend against Defendant's counterclaims of patent invalidity. The Court finds that Plaintiff's underlying substantive claims and Defendant's primary defenses to those claims depend upon facts that arose from acts occurring in Nebraska, not Georgia. The fact that those acts may produce damage in this District is not sufficient to shift the locus of operative facts from Nebraska to this district. This factor supports transfer.

Finally, based on the totality of the circumstances, the Court finds that judicial economy and the interests of justice strongly favor transfer. One of Defendant's primary defenses "is based on the preclusive effect of the District Court of Nebraska's judgment

15

regarding the adjudicated claims 1-3 on the unadjudicated claims 14-25." Def.'s Mem. 3; *see also* Answer 5, 8 ¶¶ 15-17; Airlite's Compl. for Declaratory J. ¶¶ 23-25. Plaintiffs argue that the new claims "are all narrower than the original claims and will need to be adjudicated anew," and that Defendant's collateral estoppel defense is irrelevant to the transfer of venue analysis. Pls.' Mem. 13. Although it is true that this Court is fully capable of deciding the collateral estoppel issue, it would be imprudent to do so in light of the extensive familiarity that the Nebraska District Court has with these issues. The Court observes that the Nebraska District Court issued a *Markman* Order, heard seven days of trial testimony, and presided over *Polyform I* to its conclusion. The Nebraska Court is intimately familiar with many of the issues that will be relevant to this present action. Judicial economy and the interests of justice strongly favor transfer to that Court. *See Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (finding that district court did not abuse discretion in granting transfer motion after "affording determinative weight to the consideration of judicial econonmy" where other factors were in equipose).

### C. Factors Against Transfer

The Court acknowledges that some factors weigh against transfer; however, those factors are outweighed by the factors supporting

16

transfer. For example, some of the Georgia witnesses may be beyond the subpoena power of the Nebraska Court, yet they would be within the subpoena power of this Court. *Compare* Fed. R. Civ. P. 45(e) (allowing a court to hold in contempt any person who refuses to obey a subpoena unless "the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii)"), *with* Fed R. Civ. P. 45(c)(3)(A)(ii) (requiring a court to quash or modify a subpoena that requires a nonparty to travel more than 100 miles from where the nonparty resides, works, or regularly transacts business "except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held"), *and* Fed. R. Civ. P. 45(c)(3)(B)(iii) (allowing a court to quash or modify a subpoena if it requires "a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial"). Plaintiffs have not made a persuasive case that the inability to compel certain witnesses to testify at trial will be a significant problem in this litigation. Therefore, although the Court does find that this factor weighs in favor of retaining the case, the Court finds that it is not a substantial factor.

The strongest factor supporting this Court's retention of this case is that the Middle District of Georgia is Plaintiffs' choice of

17

forum, and the Court does not dismiss this factor lightly. It is entitled to considerable weight. Nevertheless, as this Court has previously observed, this factor is entitled to less deference when the operative facts are centered outside of this district and when the plaintiffs do not reside here or in close proximity to this district. *Escobedo v. Wal-Mart Stores, Inc.*, No. 3:08-CV-105 (CDL), 2008 WL 5263709, at *3 (M.D. Ga. Dec. 17, 2008). As previously explained in this Order, the locus of operative facts is in Nebraska, not the Middle District of Georgia. Moreover, it is clear that the Middle District of Georgia is not the "home forum" for Plaintiffs, all of whom are Canadian corporations. Although one of the Plaintiffs has a separate subsidiary located here that manufactures some of the product in question, the Court finds that this factor, along with Plaintiffs' choice of forum, does not outweigh all of the other factors that support transfer of this action to the District of Nebraska.

## IV. First to File Rule

Plaintiffs also contend that this action should remain here because they filed it before Defendant filed its declaratory judgment action in Nebraska. Relying upon the "first to file rule," Plaintiffs argue that this action should be given priority over the subsequently filed Nebraska action. Pls.' Mem. 12. Whenever there are two actions involving overlapping issues and parties pending in

18

two federal courts, there is a strong presumption in favor of the forum of the first-filed suit under the first-filed rule. *Manuel*, 430 F.3d at 1135. The party objecting to jurisdiction in the first-filed forum has the burden to show compelling circumstances to warrant transfer. *Id.* The court of the first-filed suit typically has priority to determine whether the action should be transferred. *See Merial Ltd. v. Boehringer Ingelheim Vetmedica, Inc.*, No. 3:08-CV-116 (CDL), 2010 WL 942318, at *4 n.1 (M.D. Ga. Mar. 11, 2010). Plaintiffs concede that the sole issue for the Court to decide regarding the "first to file rule" is whether Defendant "has shown that its favored home forum of Nebraska is the clearly more convenient forum to overcome the preference for honoring Plaintiffs' choice of forum in a first-filed action." Pls.' Mem. 7. For the reasons previously stated, the Court finds that Defendant has made this showing.

## CONCLUSION

For the reasons set forth above, the Court concludes that this action can be adjudicated more conveniently in the United States District Court for the District of Nebraska. Therefore, Defendant's motion to transfer (ECF No. 8) is granted. In light of the clarity of the parties' briefing and the lack of novelty of the issues presented, the Court found a hearing unnecessary, and therefore,

Plaintiffs' motion for a hearing (ECF No. 13) is denied.  The Clerk shall transfer this action to the District of Nebraska.

IT IS SO ORDERED, this 15th day of October, 2010.

                                                S/Clay D. Land
                                                     CLAY D. LAND
                                    UNITED STATES DISTRICT JUDGE